**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOHNNY D. JORDAN,

 Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

 Defendant-Appellee.

No. 06-7023
(D.C. No. CIV-04-162-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN** and **BRORBY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

Plaintiff-appellant Johnny D. Jordan appeals from the order entered by the

district court affirming the Social Security Commissioner's decision denying his

application for disability insurance benefits under the Social Security Act. After

"review[ing] the Commissioner's decision to determine whether [her] factual

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]    The Honorable Wesley E. Brown, Senior District Judge, District of Kansas,
sitting by designation.

findings were supported by substantial evidence in light of the entire record and to determine whether [s]he applied the correct legal standards," we affirm. *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997).

I.

Mr. Jordan alleges that he has been disabled since July 1996, when he underwent a five-vessel coronary bypass graft procedure. His alleged health problems include hypertension, high cholesterol and blood pressure, breathing difficulties, lower-extremity edema, obesity, dizziness upon bending at the waist, sleep apnea, lack of stamina, depression, emotional difficulties, and memory loss.

An administrative law judge (ALJ) held a hearing at which Mr. Jordan was represented by counsel. In addition to Mr. Jordan's testimony, the ALJ received testimony from a vocational expert (VE) about the jobs that Mr. Jordan had held in the past. The VE termed these jobs to be contractor, sales superintendent, and retail store manager of a mini-storage facility and classified them as requiring the capacity for light work.

To reach her determination, the ALJ applied the five-part sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps). She decided at step two that Mr. Jordan did not have a severe mental impairment but that he did have severe physical

impairments. At step four, the ALJ determined that Mr. Jordan retained the residual functional capacity (RFC) to perform his past relevant positions.

The Appeals Council denied review, thus making the ALJ's decision the final decision of the Commissioner. *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2006). On judicial review, the matter was referred to a magistrate judge, *see* 28 U.S.C. § 636(b), who issued a report recommending that the Commissioner's decision be upheld. The district court adopted the report as its findings and order. This appeal followed.

## II.

Mr. Jordan's first contention on appeal is that the ALJ erred at step two of the evaluation process by failing to recognize that he had severe mental impairments. He asserts that the ALJ ignored evidence relevant to the issue: his weight gain; a consultative examiner's diagnosis of depression; medical-providers' notations of his reports of forgetfulness, irritability, and social difficulties; and his own testimony.

A claimant bears the burden at step two to present evidence that he has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987). Although we have referred to the necessary showing as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." *Hinkle*, 132 F.3d at 1352 (quotation omitted).

The ALJ's step-two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," and include the facility to understand, remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6).

In her decision, the ALJ discussed the evidence relating to Mr. Jordan's mental status and concluded that the consulting examiner's depression diagnosis was inconsistent with overwhelming contrary evidence. The examiner's report showed Mr. Jordan's ability to do basic work activities, such as the competence to follow moderately complex written instructions, utilize long-term memory (though he had difficulty with short-term memory), and perform all four arithmetic functions in his head. Aplt. App. at 369. The reviewer who completed a psychiatric review technique (PRT) form opined that Mr. Jordan's mental impairment was not severe, in that he only had a mild degree of limitation in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. There was no evidence of any extended episodes of decompensation. *Id.* at 371, 381. In sum, the ALJ's step-two

-4-

determination that Mr. Jordan did not have a severe mental impairment was reached through the application of correct legal standards and supported by substantial evidence.[1]

### III.

The ALJ denied Mr. Jordan's application at step four of the evaluation process, which requires the ALJ to (1) evaluate the claimant's physical and mental RFC; (2) determine the physical and mental demands of the claimant's past relevant work; and (3) decide whether the claimant has the ability to meet these job demands. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). Mr. Jordan argues that the ALJ erred at the first phase of step four by failing to take into account all of the physical limitations found by his treating and consulting physicians.

The ALJ's evaluation of Mr. Jordan was that he had severe physical impairments (coronary artery disease, hypertension, sleep apnea, obesity, and

---

[1] We note that the consultative examiner's mental status evaluation provides no explicit opinion on the impact of the diagnosed depression on Mr. Jordan's ability to work. It recounts Mr. Jordan's description of his daily activities: opening his family's mini-storage facility, visiting with his parents, sitting at his desk with his feet propped up, checking his investments on the computer, going out for lunch, and returning to work. He goes out to eat with his wife three to four times a week and plays cards with friends one night a week. Aplt. App. at 369. These activities are not inconsistent with the mental ability to perform basic work activities despite the report's conclusion that Mr. Jordan had problems in a social environment. The ALJ acknowledged the latter limitation in her determination that Mr. Jordan was capable of interacting with the general public only on a superficial basis.

lower extremity edema). The ALJ concluded, however, that he retained the RFC to perform the full range of light work, reduced by the inability to climb, bend, stoop, crouch, kneel, and crawl on more than an occasional basis. In arguing against this RFC assessment, Mr. Jordan asserts the ALJ improperly disregarded several limiting aspects of his medical condition. He emphasizes his frequent need to use the restroom due to the effects of a prescribed diuretic, his ankle edema and obesity, his obesity in combination with his cardiac condition, his reduced range of motion in his hips and legs, and sleep apnea.

Contrary to Mr. Jordan's contentions, the ALJ's decision provides an adequate discussion of the medical conditions documented by his physicians. This court's review of the record indicates that the RFC determination is consistent with the medical evidence. Thus, the substantial evidence test has been satisfied. Accepting Mr. Jordan's arguments would require us to reweigh the evidence and substitute our judgment for that of the Commissioner. We cannot take that course. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).[2]

_____

[2]     Mr. Jordan also asserts that he submitted to the Appeals Council new and material evidence relevant to his RFC, but the Appeals Council failed to fully and properly analyze it. In its notice and order, the Appeals Council stated that the additional evidence was made part of the record and taken into account, but that it still found "no reason under [its] rules to review the [ALJ's] decision." Aplt. App. at 5, 8. The Appeals Council's determination satisfied statutory and regulatory requirements. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). Furthermore, the new records do not undercut the ALJ's RFC determination. The more recent test results relating to Mr. Jordan's coronary artery disease do not significantly differ from the results previously presented to

(continued...)

IV.

In a related argument, Mr. Jordan claims that the ALJ failed to make an adequate determination regarding the physical and mental demands of his past relevant work at the second phase of the step-four analysis. "To make the necessary findings [at this phase], the ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations" included in the RFC. *Winfrey*, 92 F.3d at 1024 (quotation omitted).

Mr. Jordan maintains that the ALJ erroneously relied on the VE's testimony to decide that the demands of his previous jobs were compatible with his RFC. "It is improper for an ALJ to make RFC findings and then to delegate the remaining phases of the step four analysis to the vocational expert." *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). "[I]n such cases, 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review.'" *Id.* (quoting *Winfrey*, 92 F.3d at 1025).

In Mr. Jordan's case, the ALJ's decision does note with approval the VE's testimony that Mr. Jordan's past relevant jobs, as performed in the national economy, were suitable for an individual with the capacity for light work

[2](...continued)
the ALJ. Accordingly, the new evidence would have had no effect on the magistrate judge's decision.

restricted by Mr. Jordan's functional limitations. It also summarizes Mr. Jordan's own testimony about the demands of his past jobs. "There was nothing improper about this. . . . The ALJ's findings were adequate here to satisfy the step four requirements articulated in *Winfrey*." *Id.*

V.

Finally, Mr. Jordan claims that the ALJ made an improper credibility assessment. He asserts that the ALJ resorted to boilerplate language and failed to specify the evidence contradicting his testimony about the extent of his limitations, including his pain and discomfort. "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted), but "a formalistic factor-by-factor recitation of the evidence" is not necessary, *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Having examined the record as a whole, we are satisfied that the ALJ considered Mr. Jordan's testimony in the context of other pertinent evidence. For instance, the ALJ noted that Mr. Jordan's daily activities were inconsistent with his allegations of intractable disabling pain, that his physicians reported improvement in his cardiac function, and that no medical provider advised Mr. Jordan to keep his legs elevated. Based on the record as a whole,

we conclude that the ALJ's credibility findings are sufficiently linked to substantial evidence.

The judgment of the district court is AFFIRMED.

Entered for the Court


Wade Brorby
Circuit Judge